Morning, Your Honor. May it please the Court, I'm John LaTreuil, representing the petitioner, Armenia Cudjo. We have a lot to talk about today. There's a lot of issues in this case, and I want to let the Court know I'm mindful of the standard of review that applies to each one. But this is an extreme case. This is a case where virtually all of the most important defense evidence was kept away from the jury, either because of the trial court's errors, which were egregious, or trial counsel's errors, which I think were equally egregious. This is a case where essentially the only real defense that was presented was the client's own testimony. And in closing argument, the prosecutor discounted that testimony in part because of his race. And this is a case where after this presentation of evidence that was lopsided, it was unfair, the penalty phase lasted less than an hour. And that included the time that was taken to instruct the jury to present each side's arguments and present it to the jury in a death penalty case. Counsel said that was based on the lingering doubt theory, and that doing anything else would have been inconsistent. I have a client get on a stand, and I once again hit him to the car, and there's a jury, and I say, well, maybe there's some chance he didn't, so we spare his life. Not always a bad strategy. There are circumstances in which that could be reasonable, but not in this case, for two reasons, John. First, in order to make a choice as important as that, trial counsel would have had to begin by at least investigating mitigation. The record in this case is quite clear that he did nothing. At most, there's a conflict in the declaration submitted to the state court as to whether he interviewed the client himself about mitigating evidence or whether he did nothing at all. But in turning to the ineffective assistance at penalty claim, I want the court to consider one thing first. It's true that an attorney can make a strategic choice to focus on lingering doubt and not put on any mitigation at all in extreme cases when it's been supported by an investigation, but I want the court to assume for a moment that that was a reasonable choice in this case, something which I don't think it was reasonable. But even assuming that was a reasonable choice, the Supreme Court in this court has held many times that when you execute a strategy so poorly as to make it completely ineffective, the choice to use that strategy doesn't matter, and this is exactly such a case. That claim was presented to the California Supreme Court in its direct appeal, and what the petitioner said is at minimum, if trial counsel wanted to choose a lingering doubt strategy at minimum, what he had to do is at least present evidence to that jury that it didn't hear during the guilt phase of the trial so that it would have something to reevaluate. This is the same jury that had already found him guilty beyond a reasonable doubt, but in this case, he presented no evidence at all. Didn't trial counsel have a reasonable concern that bringing in mitigating evidence at the penalty stage could raise concerns about the petitioner's past convictions? No, and the reason it wasn't reasonable, there's two reasons. There were two prior convictions that conceivably trial counsel could have been concerned about. The first was a conviction of grand theft of person, but the jury already knew about that conviction because he had brought it out during the direct evidence phase of the trial. The second conviction was a robbery conviction in Arizona, but the record tells us quite clearly that the prosecution did not know about it, didn't know it even existed, and so there's no risk of triggering an aggravating prior crime when the prosecutor doesn't know about it. Does the defense counsel know the prosecutor doesn't know about it? Yes, he actually said that in his sworn declaration. He said he believed the prosecutor didn't know about it, and actually the trial transcript prior to the penalty phase, the prosecutor says, we're not going to put on any aggravating evidence. And so there's no reason to believe that that prior is going to come in, and the jury already knows about the other prior, which was a relatively minor case for grand theft of person, but one of the other things is even if that prior had come in, and even if trial counsel might have made a strategic choice to try to avoid that, one thing we know from Belmontes, the Supreme Court's recent decision, is that you don't have to avoid presenting all mitigation just because you're concerned about a prior. You can present mitigation in California that is designed specifically not to elicit that prior. That's exactly what trial counsel did in Belmontes. He actually put on nine witnesses talking about some of the kinds of facts that are important here, the deprived childhood of the petitioner in that case, the fact that he had done very positive things in his life, and the fact that he didn't have the kinds of advantage that other people in his situation did. But in this case, no evidence was presented whatsoever, and I think the reason why I focus on that particular part of this claim is because the California Supreme Court spoke on that. And one of the issues that I confront in my ineffective assistance claims is that there are summary denials in terms of the pure ineffective assistance mitigation claims, and so this Court's empowered to apply Richter and basically indulge every reason why trial counsel might have acted as he did. But with respect to that particular part of the claim, the California Supreme Court has spoken, and what the California Supreme Court said is trial counsel was not ineffective for failing to put on any evidence of lingering doubt because the same evidentiary standards would have applied in the penalty phase as applied during the guilt phase. It is true that $8,000 was given to counsel to be used for mitigating evidence, correct? That's correct. And then you say there was nothing put on. I mean, am I to just assume then the $8,000 was wasted, or can I assume by the fact he got some money for it that he did some investigation and he didn't put it on? The Court can assume that. It cannot assume that, and the reason is that he's admitted that that's not true. Both in front of the state court, the declarations were submitted that no investigation into mitigating evidence was done. Also, at the federal hearing, the same admission was made. And so I think it's virtually an uncontested fact at this point that at most all trial counsel did was interview the defendant himself. The reason I brought up the issue about lingering doubt and the assumption that it might be reasonable is because the California Supreme Court's stated reason for denying that claim was contrary to federal law. In Green v. Georgia, the Supreme Court made it quite clear, as it has subsequently, that it is constitutional error to not let a capital defendant present evidence in the penalty phase just because of the application of a hearsay rule. And that was the reason that, for example, the confession of John Culver was kept from this jury during the guilt phase was because of the purported application of a hearsay rule. And there's very serious error in terms of excluding that evidence, which I do want to turn to now. We're talking only about the Culver is what your argument is about at this point. Because it seemed to me the record does show counsel investigated the deputy merit about the incident, that he investigated him and determined deputy merit might not be a witness that could provide helpful information. Again, I think this is an allegation that was refuted in the state court. And so I don't think even that allegation is entitled to any deference. But I think that there's two confessions, and I think that's an important point. The confession that you're referring to is the second confession also made in jail. The first confession was even more detailed than that was the confession to John Culver. And I want to frankly say I think that's the strongest claim in this petition. I think that's the reason that this court should grant relief. Does it make a difference in this particular matter that we're really talking about live testimony versus in other matters where we've discussed this, we were only talking about a hearsay that would come in from someone else? It does make a difference with respect to the Sixth Amendment portion of that claim. Of course, it violated both the Fifth and the Sixth Amendments for the trial court to exclude that testimony. But in Washington v. Texas, 1967 case, that was the case where the Sixth Amendment was actually incorporated against the states. And what the Supreme Court said is the compulsory process clause of the Sixth Amendment exists precisely so that trial courts will not exclude a witness based on an assumption about that witness's credibility. And as applied in that particular case, what the Supreme Court said was, here's a witness who has percipient testimony that's relevant, that goes to the defense, and it's error, and it's a constitutional error to exclude that. Now, what the California Supreme Court said was exactly the opposite. It said, and I think the quote is something like, we will not assume that each and every time a trial court excludes an individual witness as unworthy of credit, we don't assume that the Sixth Amendment applies to that. And that's just plainly wrong. That, in fact, Washington v. Texas makes it quite clear that that's plainly wrong. And so we are, so the starting point for this case is 2254B, and we do have to establish that. This is a procedural posture of that claim. That's an uncertified claim, right? That is an uncertified claim. We would have to certify it, which we can do. And in the state courts this was raised. How was it dealt with by the state courts? The state court issued actually quite a lengthy published decision on it. And so right now the California Supreme Court has a published decision that says that it doesn't violate the Sixth Amendment for a trial court to exclude a witness because the trial court doesn't believe him, which means that trial courts all throughout California can rely on that representation about what the Sixth Amendment means. And because of that, and because of that. After saying that, then they went to the state evidentiary issue, correct? Right. And went to a harmless error review. That's right. And that harmless error review was conducted under a state standard, which is totally different. And so it really doesn't have bearing on this issue. And your argument is based on Chambers? The argument is also based on Chambers.  Chambers would apply to the exclusion of any critical defense. But isn't Chambers focused on an arbitrary state rule? Here, there is a long recognized hearsay rule. Actually, it was an almost identical rule in Chambers as well. Chambers involved both the declaration against interest exception, which is the same rule that's implied in this case. It also involved a vouching rule. But I think it's wrong to characterize Chambers as applying to a rule. Chambers and all of the cases that came after applied to rulings. And so even facially valid state rules, rules which in some circumstances would not violate the right to due process, when they are applied in a certain way that's unfair and excludes critical defense evidence, they do violate due process. And Chambers was very fact specific and talked about the facts of that case. And so it's not a reasonable construction of Chambers to say that the Fifth Amendment's due process clause is only implicated when there's a state rule in issue. It's not a reasonable interpretation of those cases. And it's true that a lot of the cases that have interpreted Chambers do apply to rules. And I think the reason for that is that no trial judge would think that it is consistent with the Constitution to exclude a witness because that witness is not credible. Any trial judge would know that this is a constitutional violation. And in this particular matter, what I guess you're really arguing is the testimony that was admitted of the preliminary hearing was so, if you will, substantial as to the conviction, that Chambers would apply and say you needed to have some confrontation and cross of that testimony. That is certainly true. I think that excluding critical defense evidence, especially a direct confession of a third party would implicate Chambers, regardless of whether this unconfronted testimony was admitted during the prosecution's case. But I would also agree that it's even more egregious to exclude that evidence when the prosecution's evidence was so unreliable, as the Court has pointed out. And that gets to the general, and because this Court has to determine prejudice, it has to evaluate all the evidence that was presented and all the evidence that should have been presented. And it's right to point out that during the prosecution's case. Let me get your back before you get to prejudice. You said the State Court ruled that the trial court did not err. I'm looking at the opinion. It seems to say that the Court seems to say that the Superior Court did err. And then find it harmless. It's true. The California Supreme Court did find that it was actually an abuse of discretion. So there was a clear error. But what they said was, this wasn't a constitutional error. It was an error in the application of its Declaration Against Interest Exception. And in fact, as part of that analysis, what the California Supreme Court said is, the problem here is that the trial court took a credibility determination away from the jury. And it said that's absolutely not permissible. And yet it somehow failed to appreciate that the reason that's not permissible is because of the Sixth Amendment. It's because of the compulsory process clause. And so it really is almost an error. Why does it matter? If it said it was error, why does it matter whether the character is a constitutional error or a common law error, statutory error, rule of evidence error? It said it's error. So I'm not understanding. Well, of course, the federal courts can only adjudicate a constitutional error. And so it doesn't – the fact that it found a state court doesn't – But the state court found those errors. So what is it that we're second-guessing here? We're saying, oh, you put the wrong label. Is there a consequence to have a constitutional error that's different from having other kinds of error? Does the prejudice have to be greater or less? The prejudice standard is actually much less for a constitutional error. Because for a statutory error, they applied the prejudice standard from this case called People v. Watson, which required that the petitioner actually establish that the error would have affected the outcome or was likely to affect the outcome. But we're applying Brex now. And assuming this court agrees that it was a constitutional error. Okay. You switched from they did to we do. Let's just stay with they did. Had they concluded it was a constitutional error, would they have applied a different prejudice standard? Yes. They would have in California? Yes, they would have. They would have applied Chapman. As opposed to? As opposed to People v. Watson, which is the state court. How are the two standards different? What does Watson say? Watson requires that the defendant establish that the error was probably affected the outcome. I'm not sure of the exact language, but it required some proof.  Now, had the California Supreme Court found constitutional error, it would have applied Chapman. And that standard requires that the error be proven harmless beyond a reasonable doubt. Now, to complicate things further, on federal habeas review, if this court finds a constitutional error, it applies Brecht. Well, but if I understand the California Supreme Court's decision, and that's why I'm asking you the question, it seemed to me that they were suggesting that there was a constitutional principle, federal constitutional principle involved, but they didn't find any precedent to suggest that that had been violated. Isn't that what they said? No, I don't think that's what they said. Here's what it says. California Supreme Court. The United States Supreme Court has held that the constitutional right to present and confront material witnesses may be infringed by general rules of evidence or procedure. However, the Supreme Court has never suggested that a trial court commits constitutional error when it individually assesses and rejects a material defense witness as credible. So it seemed to me like they were suggesting that they did not commit constitutional error, and therefore they moved to state law. That's correct. And maybe I misunderstood the court's question. So, frankly, what we're suggesting, it seems to me that the thrust of your argument is they did commit constitutional error. That's right. Under the Sixth Amendment, by not allowing the witness to present his defense, or the defendant to present his defense. That's right. And not only under the Sixth Amendment, but also the Fifth Amendment as well. And applying the standard that we apply here, which really just... Well, it's actually one level more complicated than that. What you're saying is we don't defer to their prejudice analysis. I'm not necessarily agreeing with it. I'm just trying to make sure I understand your argument. Because it just makes sense. They said there's no constitutional error, so they don't apply constitutional prejudice analysis. And therefore the prejudice analysis doesn't deserve deference. We do our own. That's right. And we do ours on the back. That's correct, Your Honor. That's the consequence, okay? Yes, that's quite right. But the state court will determine whether a state rule of evidence is being appropriately applied, even in the case of an error, whether the error is harmless or not. Certainly the state court can apply its own laws with respect to the statutory harmless error analysis. That's right. But we wouldn't review what the state court does under its own state law or under its own state constitution. That's exactly right. We would only review if it's a violation of the federal constitution. And they suggested it wasn't. And it's my understanding that you're saying, no, Green, Chambers, all of these say it is a constitutional violation. They were wrong. That's precisely right. And beyond that, that the decision was unreasonable because that's something that we have to show. It wasn't reasonable to come to the conclusion that they did, that there was no constitutional error. Part of the reason is because Washington is so clear that credibility determinations are for the jury. But another reason is that in applying Chambers, what the court said is, we are assuming that Chambers just generally doesn't apply at all. Now, it would be one thing if the California Supreme Court engaged with Chambers in the facts and distinguished it and said, this is a factually distinguishable situation. But they didn't do that. They didn't apply it at all. And the reason they didn't apply it is because they just thought that it didn't apply. I think we understand that argument. Why don't you go one step further? Assuming we follow you down this road, we are now at Brecht. Assuming we follow you down, I don't know whether we will or not, but so apply Brecht for us. Under Brecht, I think the California Supreme Court has told us quite a bit about what matters. And what matters is that this was an extremely close case. The prosecution's case was relatively weak. It depended on the testimony of Gregory, who claimed Gregory is, of course, the petitioner's brother. And so I'll refer to him as Gregory and the petitioner as Armenia, if that's okay. And what Gregory had actually claimed that Armenia confessed to this crime, but when he's actually testified under oath, he denied that that ever happened. And he had to be confronted with his prior statements, which he claimed he made only because they were putting words in his mouth. And so it's already a shaky case to begin with. The eyewitness account of the person who's responsible for this murder describes Gregory. It doesn't describe Armenia. So we already have a case in which the evidence is equally pointing to either Gregory or Armenia, and in some circumstances, even more towards Gregory. Now, it's also true that semen was found on the victim, and that semen was tied to Armenia. And one of the things that- Well, it could have been Armenia, but not Gregory. That's what the testimony at trial was. But one of the errors that the district court found was that that was never meaningfully tested. And the district court- What do you mean never meaningfully tested? I don't understand that. That means that trial counsel never had it independently investigated. He never hired his own expert to determine whether the result's reliable. There were significant problems in the chain of custody with respect to that evidence. Instead of actually subjecting that critical evidence to an adversary process, what he did was he just said, okay, Armenia, you're going to testify. And he put on-he had him get up and testify in a way that was consistent with that evidence. And he did that, and I think his testimony would have been credible had it been corroborated by the other evidence that should have been presented. Is there anything in the record which suggests that the testing was at fault in some way, inconclusive or defective? Well, there were-in state habeas petitions, there was allegations that the chain of custody was not appropriately established. That's not one of the claims that's briefed in front of this court. I think it's critically important, especially because the admission of that evidence triggers other strategic decisions that trial counsel had to make later. But that's not in front of us. But that's not-what is in front of us is that this is a case where the evidence pointed in two directions equally strongly. While there was some evidence that pointed more towards Armenia than Gregory, there was other evidence that pointed a lot more strongly to Gregory. And so this is a case where a confession, and in fact two confessions, would have made a difference. The Supreme Court's analysis in Arizona v. Fulminante, I think, is really the starting point. And what they said about confessions is that they are so powerful that when a jury is confronted with a confession, it's doubtful they can ever put that out of their mind. And in Fulminante, they're talking about whether they can actually find a reasonable doubt at all. Now, I think the reasoning applies just as strongly when the confession is a third party and your defense is this is the person who's responsible for the murder. And this court, just last year, agreed with that analysis in Lunbury v. Hornby. In that case, there was a confession that was less reliable than the confession in this case. And the evidence against the defendant was stronger than the evidence in this case because the defendant in that case really had confessed from her own mouth. And this court, citing Fulminante, said a confession is virtually impossible to ignore. And so the question is can this court really have confidence in this trial and the outcome that was reached when a confession, and in fact two confessions, was kept from the jury? But my worry about all of that is that leads to Brecht and it leads to the Brecht test. But you have to suggest that the state court made a violation of clearly established Supreme Court precedent. What is that violation? Your best effort. I want to answer the court's question. I see I have five minutes, so I do want to reserve a little time for rebuttal. But it's a very important question. Their clearly established Supreme Court precedent that was violated in this case was Washington v. Texas, insofar as the California Supreme Court said that the Sixth Amendment does not apply to the exclusion of a witness based on the trial court's determination of their credibility. That was contrary to Washington v. Texas. It was also contrary to chambers for the California Supreme Court to decline to actually apply a Fifth Amendment analysis to the actual evidence in this case. That's the clearly established Supreme Court precedent. So 2254D is met just based on what the California Supreme Court said it was doing. And because that test has been met, we review prejudice de novo under Brecht. And I think that based on the evidence that was presented in this case, and particularly the evidence that was not, I think it's really hard to have confidence in the outcome of this trial. I reserve the remainder of my time for rebuttal. Court's permission. Thank you. Thank you. I'll hear from the warden. Good morning, Your Honor. Deputy Attorney General Bill Bilderbach on behalf of Respondent. Turning my attention first to the claim regarding the preclusion of John Culver's testimony about the purported confession of Gregory Cujo, the California Supreme Court was clear that it upheld the preclusion of that evidence or found that the preclusion of that evidence was not a constitutional violation for two reasons. But that's not binding on us. Well, I believe that the California Supreme Court's decision that this was not a constitutional violation must be deferred to by this court under 2254D. Just a minute. I think that's the ultimate question, whether it's a constitutional violation. Correct. And so I think we defer if, in fact, they didn't get something wrong in what they were suggesting. Correct. And so I guess my worry about this particular matter is that in the California Supreme Court decision, it seems to me that the California Supreme Court does everything but say this testimony was worth hearing. They talk about how trustworthy it was, that there are substantial assurances about trustworthy. They even say the testimony, if made as claimed, was probably true. So the California Supreme Court says it's probably too true testimony. We have substantial assurances the confession was trustworthy. They say neither the hearsay rule nor its exceptions are concerned with the credibility of the witnesses who testified directly to the jury. In fact, everything about it has persuasive assurances of trustworthiness, but we're not going to find it ought to come in. I would disagree with that, Your Honor. I think that's overreading California's decision. In fact, California was very clear and very specific that the preclusion of this testimony was error. No one is disputing that the preclusion of this testimony was error. And the reason it was error? California found that this was error under California state law. Well, but why was it error? Because it was trustworthy. Because it was assurance. Because there was something worth hearing in it. And then it said there's no Supreme Court precedent that says, based on that idea, we ought to hear the testimony. And so, therefore, we, on our own view of California law, aren't going to let it in. Well, and again, Your Honor, it's not a question of letting it in or not letting it in. We all agree that the testimony was improperly excluded. The question is, given that that error, which we all agree occurred in this case, what is the test for measuring the prejudice from that error? Okay. So if that's the test, why isn't Chambers indistinguishable on this case? For the same reason that the Ninth Circuit found that the Sixth Amendment was not implicated under essentially identical facts in Rhodes v. Henry. But in Rhodes v. Henry, if we look at that, here was hearsay testimony from a drunk party that lacked persuasive assurances of trustworthiness. And we don't have that in this case. In this case, I am supposed to deal with what the state court found. So we're not talking about somebody who lacked persuasive assurances of trustworthiness. We're talking about we do have assurances of trustworthiness. That's our case. The issue was not whether a live witness would be reliable under Rhodes. It was quite different. And so here we have a case, Chambers, dead on with what we have, nobody saying there was no assurances that it would be true. In fact, saying, if made as claimed, it is probably true. And we're going to say the Supreme Court under Chambers doesn't suggest that? Yes, sir. How? There are two parties speaking in the case. There's the original declarant. In the case, in the Rhodes case, it was the drunkard's confession. And then there is the person who overheard the confession. In our case, it is Gregory Cujo made a statement to John Culver. And in the Rhodes case, it was the drunkard's confession to the, I believe it was the jailer in that case, or a police officer in any event. In both of those cases, in both this court's case in Rhodes and in the California Supreme Court's view in the instant case, the person repeating the statement was a reliable witness. No one was questioning in Rhodes v. Henry that the person who was going to get up on the witness stand and was going to say the things that they were going to say was a reliable reporter. It was a police officer. We're not talking about the reliable reporter. We're talking in Rhodes and Chambers about whether the testimony given to the reliable reporter would have assurance of good testimony. I have to disagree with the court because, and if the court would return its attention specifically to the language the court just quoted to me, the question is testimony. Would the testimony have been reliable? Not the underlying statement itself. And in Rhodes v. Henry, the reason that the underlying statement itself, the exclusion of the testimony about the underlying statement was not constitutional error was because the underlying statement was not reliable. And that is precisely our facts here. Gregory Cujo, you're suggesting that all that the Supreme Court said about the reliability of what it was that witness was going to tell us had more to do with whether the witness could tell it reliably than whether the Cujo, the brother, said it reliably? That's precisely, and again, if the court would turn its attention to that portion of this California Supreme Court's analysis, it's discussing the hearsay rule. And when you're talking about reliability in the context of the hearsay rule, this is why it was error under state law. Because the question for credibility purposes, for reliability purposes under the hearsay rule, is not the statement being reported. It is the reporter's credibility himself. Well, frankly, I don't... Why is that the case? Why is what the case, Your Honor? You say it's, when it comes to hearsay, what you're looking at is the reliability of the witness rather than the reliability of the declarant. I'm not saying that that's necessarily a forbidden analysis. I'm saying that's what happened in this case. If you turn your attention to the California Supreme Court's analysis of this question, they're very... Go back one step. What is it about Gregory's statement that you find reliable? Gregory's statement to John Culver describes a crime that did not occur. He describes a series of transactions... I say you, but... Well, because it is utterly irreconcilable with the physical evidence from the crime scene. According to Gregory Cujo's confession to John Culver, he came into the house, found the victim there, she screamed, he attacked her, and hit her with a blunt object until she was dead. That's what John Culver says Gregory Cujo told him. That's not what happened. Because the victim in this case was hogtied before she was murdered. Why couldn't she have screamed before she was hogtied and gagged? Because she may well have, but that's not what the John Culver report said happened. He gave a different version of the crime. Also, according to the John Culver version of the crime, Gregory Cujo was perfectly aware that the victim had no money, and yet he went to her house to rob her. That's his version of the crime. It doesn't make any sense. That's why it's unreliable. It's nonsensical. Why is this the kind of stuff that you argue to the jury? It absolutely would be something that I would argue to a jury, but that's not the question before the court today. The question before the court today is whether the preclusion of John Culver's testimony was a constitutional violation. And I go back to the Supreme Court's interpretation of that. The court held that there was error. Absolutely. All right, take it from there. And analyzed it, and then turned itself very specifically to the question of whether that error implicated the United States Constitution or was simply a question of state law. That's where I had my problem. We defer to findings of fact, but we don't necessarily defer to state court interpretations of federal constitutional law. I disagree with that wholeheartedly, Your Honor. I think that's irreconcilable with 2254-D1, with Penn-Holster, with Richter v. Harrington. You have to defer to a state court's determination of a federal constitutional law unless there is clearly established United States Supreme Court authority under which the state court determination of the question is not merely erroneous, but unreasonably erroneous. I'm still having a tough time with this idea with Chambers, with Lunbury, our own case, with Washington, with all of these particular cases, which all had the same kind of a situation as we do in front of us. Some, however, had no state imprimatur that this would be good testimony. Not good. That it would, if made claimed, was probably true testimony. And yet they said, in those situations, the Sixth Amendment has been violated because you didn't allow the testimony in. It seems to me that's dead on contrary to what the Supreme Court of California did. I think what the Supreme Court of California did here is precisely what this court did in Rhodes v. Henry. It precluded evidence of a confession by a purported third party. That's exactly our facts. And it excluded that confession notwithstanding the determination by the state court in Rhodes and by the trial court here that the reporter was a reliable person. That they believed that the statement was made by the purported confessor and nevertheless came to the conclusion that the Sixth Amendment was not offended by the preclusion of the testimony. You will agree as well that the California Supreme Court found there was no reason to exclude the evidence because it was duplicative or prejudicial or confusing. But there were important reasons the evidence should have been brought in. I don't dispute that it was error to exclude this evidence. I cannot express that sentiment any more clearly to the court. It was error to exclude this evidence. Let's say we do this again with you just so we can get us to the next step in the analysis. Certainly. And we conclude that there was constitutionally a contract with the Supreme Court of California held. What then happens to the state court prejudice analysis? Well, I think the state court prejudice analysis could be very instructive to this court because notwithstanding how my friend has chosen to style the argument, this court and other federal courts have recognized that California's People v. Watson harmless error standard is essentially identical to this court's Brecht v. Abrahamsen standard for reviewing error of constitutional dimension on habeas corpus, which is to say whether there is a reasonable probability of a more favorable determination if, in this case, the inappropriately excluded evidence had been admitted. And in this case, that was the thrust of the California Supreme Court's analysis. They came to the conclusion that there was no reasonable probability of a more favorable determination because of these problems with the nature of Gregory Cujo's confession. You would defer to them, right, because it's not the same analysis? No, you would not defer to them because it is a different – well, again, I don't think it's a different analysis. I think it is essentially analytically a coextensive analysis. But, no, you don't show deference if you come to the conclusion that the state court erred on the federal constitutional question. But I think it's very difficult to say, and with all respect to Judge Smith's strong opinions the Chamber is controlling in this case. I don't know that it's strong opinion. I'm just trying to lay it out as best I can based on what's going on here. Answer his question. Are you fighting my question? By no means. Are you going to go back to arguing everything I told you to stop arguing about? No, by no means. If I did, I apologize. But, no, it wasn't my intention. My intention was – I think you did. You said, well, it's hard to do it. But, Ty, you're a lawyer, right? So we tried to get you to assume things that you don't agree with. Fair enough. Are we in that universe? Yes. Okay, so we're not going to talk about this other thing anymore. Okay. Because it just distracts from the thing I want to talk about right now, which is prejudice. Okay? So, no, you do not defer to California's prejudice analysis. However, as I was explaining, California's prejudice – Okay, you answered my question, so why don't you stop talking and listen to the next question. Certainly. Do you agree with the closing counsel? Because I'd like to know what you guys agree on and disagree on, that had the California Supreme Court found constitutional error, it would have applied a different prejudice analysis. Yes, that's correct. If California had found constitutional error, they would have applied Chapman versus California to the harmless error test. But in your view, our Brecht analysis is more akin to their – Watson. Watson. Yes. Than it is to Chapman. Oh, there's no question that, yes. California's Watson analysis rises and falls on whether there's a reasonable probability of a more favorable determination, which is identical, as far as I can see analytically, to the U.S. Supreme Court's test in Brecht versus Abrahamson. And that's why I return to the California analysis of – So that's a more stringent prejudice analysis? Chapman is? No, Watson. Watson is a less stringent prejudice analysis than Chapman versus California. Brecht versus Abrahamson is a less stringent prejudice analysis than Chapman versus California. Brecht versus Abrahamson and People v. Watson are essentially similar prejudice analyses. Moving on to a somewhat different issue, how do you factor in the prosecutor's racial comment into all of this? I find the prosecutor's racial comment inappropriate, as California did, and unfortunate. Nevertheless, it was brief, isolated, and was by no means in any sense a focus of the prosecutor's argument. It was a minor parenthetical remark. Does it figure at all in weighing the prejudice? By no means, Your Honor, because it really was a statement that ultimately was of no moment to the determination of the matter. So I find that it has no bearing ultimately on the question, and certainly it has no bearing on the question of the purported error in the exclusion of the John Culver testimony. No, I would disagree with that. Do you want to address the issues involving the penalty phase? Certainly. Turning my attention to the ineffective assistance of counsel claim, the predicate of Mr. Cujo's argument are twofold. One is that there is an absolute duty to investigate a defendant's background before making the decision regarding whether or not to put on background or social mitigating evidence. That predicate is false. The United States Supreme Court said so last term in the pinholster decision. In fact, that was precisely the argument that was put forth in the pinholster decision, and the United States Supreme Court said that the en banc majority was wrong to articulate such a rule. But it was pretty happy with the dissent, I remember. I was pretty happy with the dissent myself, Your Honor. There's also this notion that there is a minimum, that a strategic decision made after consultation with counsel, or excuse me, after counsel's consultation with this client, is going to be insufficient as a matter, of course, to deciding whether to pursue a background mitigating evidence defense. The Supreme Court said on a number of occasions that counsel has to have an informed, make an informed decision, and unless he has these bids for these other things that might be mitigating, he can't really make an informed decision as to whether the, I'm sorry, it's called the lingering doubt defense is the right one. That's the one that was offered. It's sort of a long shot, a lingering doubt. Yes. But sometimes you don't have anything, you know. This is a lot of defense lawyers. Sometimes you have only long shots. But in this case, they're pointing out the fact that it seems to me the lawyer didn't even ask the client, much less go and talk to his friends and relatives and all that, but didn't even inquire with the client if he had head injuries, if he had what kind of childhood he had, if he got abused by his parents. None of that stuff came up. Well, that's not accurate, Your Honor. I know that they've made those representations, but if you were to turn your attention to the California Supreme Court's decision on the state habeas matter, you'll see that the California Supreme Court notes, and if you were to turn your attention, and I've included it in the In Re Cujo? I'm sorry? That's In Re Cujo? Yes, correct. And particularly if you were to examine the declaration filed by trial counsel by stipulation and without objection in the California Supreme Court, counsel is perfectly clear that he did talk to his client about his background and came away with the conclusion that there was not going to be anything useful by pursuing that sort of a defense. In Penholster, the U.S. Supreme Court said that the Ninth Circuit drew from a series of cases that are heavily relied upon by my opponent, Williams, Wiggins, and Rompea, a constitutional duty to investigate and the principle that it is prima facie and effective assistance for counsel to abandon their investigation of the petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources. That is precisely the argument that Mr. Luttrell is making in his briefs and is making before this court today. The U.S. Supreme Court said, The court of appeals misapplied strictly. Beyond the general requirement of reasonableness, specific guidelines are not appropriate. They specifically said that rule is not clearly established. And that's the question here. Does the United States Supreme Court clearly establish the rule that Mr. Luttrell wants this court to apply? They have not. Let's look at Wiggins. It seems to me that in Wiggins, the Supreme Court said that a counsel can't make a tactical decision not to investigate if counsel has not fulfilled their obligation to conduct a thorough investigation of the defendant's background. That's at 539-522, 539 U.S. The question then is not whether counsel exercised reasonable professional judgment, but whether the investigation supporting counsel's decision not to introduce any mitigating evidence of background was itself reasonable. Isn't that the question? That's absolutely correct. Didn't the counsel in Wiggins provide more investigation than in this case? He investigated the psychologist. He investigated the written pre-sentence report. He investigated the records from the Department of Social Services. And yet in Wiggins, the Supreme Court said this falls below professional standards. Well, one has to keep in mind that the specific flaw that was identified by the United States Supreme Court in Wiggins was the failure to review the aggravation materials that had been provided by the prosecution to the defense. That is to say, the prosecution handed them a file, and they didn't even bother to read it. That was the deficiency identified by the United States Supreme Court in Wiggins. There's certainly nothing comparable going on in this case. What they're trying to say is that there is a duty to conduct an independent investigation. And that is, and again, returning to the language from Pinholster, quoting Wiggins v. Smith. Well, my worry is that I'm looking at Wiggins, then I look at Burger v. Kemp. At least in Burger v. Kemp, they interviewed some family witnesses for mitigating evidence, as well as a lawyer who was a family friend. They employed a psychologist, and the court said that's not enough. Well, unless this court is prepared to say that there is a per se duty to investigate, a minimal per se duty to investigate, then it would be impossible that can be extracted from, that is compelled, that the rule is compelled by those U.S. Supreme Court cases, not merely suggested and not merely the best reading, but compelled, then California's decision to reject the claim has to be left unmolested. Well, if we find a constitutional violation, we're really not talking about whether California did it right. We're trying to make that determination. I mean, if we're suggesting California didn't do it right as to this, then we have to make that determination, don't we? No, Your Honor. This court may not molest the California, may not disturb the California decision, unless the California decision is not merely erroneous, but unreasonable. This court, Your Honor, in his best personal judgment, could be firmly convinced that this is a constitutional error, but unless the California rejection of the claim is compelled by U.S. Supreme Court precedent, then there is no basis for disturbing it. As a matter of fact, the way the court just asked me the question is a very nice encapsulation of what this court is not permitted to do. You may not simply say, we disagree with California, so we have to decide for ourselves whether the Constitution was violated. Counsel, is there a procedural default sub-issue here, referring back to the independent state ground denial of the claim for lack of timeliness? Yeah, and it's a little bit complicated, and we've been talking about it a bit ourselves and trying to figure out what the best way to access that is. But there were two state habeas petitions raising claims of ineffective assistance of counsel. And the first one was rejected solely on the merits. The second one was rejected on the merits, but also on the basis that it was untimely. Exactly. And it would be our position that the petition that was untimely, which was the second state habeas petition, that that petition is procedurally barred. Now, that petition is, for all intents and purposes, identical to the federal petition on this issue, on the IAC issue. That's because it refers to new evidence that wasn't presented to the court with respect to the first petition. That's precisely correct. And Walker v. Martin from last term couldn't be clearer that California's timeliness rule is a terrific procedural bar and precludes federal consideration of the claim. What about the new evidence? The new evidence that was in the second petition, and I don't want to belabor it with great detail, but there was a social historian and I believe some mental health experts that were brought in. And I've detailed it in my brief. It goes only to this penalty phase. Right, to the background mitigation evidence issue. That's right. Let me get you back to my comments about the racial comment, because I just want to sort of put it in the starkest possible terms and see if you can... This was a comment, this was a case where there was strong evidence that the defendant, who's black, had had sexual relations with a white woman, married a white woman with a child present in the house. And, you know, it's still a sensitive issue in our society. This was, what, 10 years ago or 12 years ago? How long ago was the crime committed? 15 years ago? It was even more sensitive then. And this is the point at which the jury has to judge the defendant and his story. And the prosecutor casts doubt on him by saying the idea that this white married woman would have consensual sex with a black man is just inherently incredible. Why doesn't that inflame, you know, essentially appeal to the jury's racial prejudices? And why is there a sort of subtext saying you ought to punish this guy, you ought to find him guilty because he's a black guy having sex with a white woman? Why isn't that sort of the subtext that sort of paints the entire process in a really major way? It is a troubling comment and an inappropriate comment, and that was California's conclusion as well, Your Honor. But, of course, that's not the end of the analysis. And if the prosecutor had articulated that statement as baldly as the hypothetical that the court just put forth, it would be a much more troubling and a much more problematic case. But let's say he gives the N-word. That would be inappropriate and outrageous. But essentially this is what happened here. I couldn't disagree more, Your Honor. Why? The use of the N-word is a much more inflammatory racial epithet than describing a person as black. As a matter of fact, describing a person as... But he doesn't say this woman is black. He says the idea that she would have sex with any man, a black man, you know, you know, it's sort of a derisive idea that, you know, this woman would have sex particularly with a black man. I don't know. It's not that different from using the N-word. Well, I... Okay, I disagree with the court on that point. I think the N-word is particularly and specifically inflammatory and provocative. And, again, I'm not defending the prosecutor's comment. The prosecutor's comment was inappropriate. And how do you judge that? The California Supreme Court found it error. Yes. But non-prejudicial. Yes. And as to that, you believe we owe deference to the California Supreme Court? Of course. There's no question that you owe deference to the California Supreme Court's determination of that question. Absolutely. You owe deference to every determination by the California Supreme Court. Except for this on the constitutional claim, if you find it was a constitutional claim, right? And, again, you will show deference on the constitutional question, and then once you have satisfied yourself that deference has been met, then you can move to the next question. But you can't jump over deference. Or deference has not been met. I beg your pardon? We can, coming to the constitutional question, we have to say, well, the state court could be right, of course, but if we find all of the federal law contrary to what the state court suggested, then at that point, deference is over, correct? I would disagree, Your Honor. I'm not trying to be too cute with the court, but if the premise of the court's question is the state court could be right, then that ends the analysis. Well, okay. If the state court is wrong, absolutely wrong, then we don't have to have any deference as to the determination of prejudice. That was my colleague's question, as I understand it. In the specific context of the John Culver evidence, yes, that's correct, because, for example, in another context, for example, in the context of the ineffective assistance of counsel claims, however, you would show deference on the prejudice inquiry that's attendant to that claim. Okay, I got it. That's why I said except for. Right, yes. And you sort of want to get into other things. Yes. Because there isn't deference. Yes. You're out of time, but I'm wondering, do you want to say anything at all about the one certified issue? The lethal ejection issue? Yes. No, I don't have anything to add unless the court has a question on that. There's no pen to take. As far as, to the best of my knowledge, there is no lethal injection protocol that's currently operative in California, so it would be an entirely hypothetical and, therefore, inappropriate inquiry. I assume you rely on Bayes as well? Well, of course I would rely on Bayes if California ever adopts a protocol and it ends up being a three-drug protocol, and I'm back in front of this court talking about the constitutionality of that in a case in controversy where it's actually germane. Yes, I will be referring to Bayes. But at this point, there's no execution protocol at all in California. That's my understanding, Your Honor. That's correct. So that claim is not ripe or moot or something? That's correct. I would say it's not ripe until we have a lethal injection protocol, and then I'm sure. Well, it may have been ripe when the district court acted on it. In the Morales litigation? No, no. I mean, I forget what the timing exactly was, but there was a time when there was a protocol in place. Oh, yes, and that was suspended by the Morales litigation, and then in the wake of the Morales litigation, it's all been essentially on hold and that we've been through a number of administrative hearings, and I think that my best understanding is that as of this conversation, it's not ripe. It was ripe, but it's no longer ripe. I don't think it was even ripe at the time of this appeal because the Morales litigation was already ongoing, and so there was a stay in place in any event. Whether it was or wasn't, right now it's not. I suppose once a final protocol is established and there's an execution date, it would be ripe at that point to bring another habeas? Or a 1983 action, which might be a better fit procedurally because it would be our position that the lethal injection question doesn't attack the integrity of the conviction or sentence at all, but I don't think the court wants to go too far down that road with me. We're getting pretty hypothetical. Okay. Thank you. Thank you very much. Thank you for your comment. You bet. I believe we have a little time left for a bottle. Thank you. I do just want to address a couple of the points the respondent made, and I'll go in order as best I can. One of the things that the respondent is doing in this case is asking this case to analogize to Rose v. Henry and the reliability of the reporter. I think, however, it would be profoundly disrespectful to the California Supreme Court to ignore its factual findings about the reliability of this testimony, which is what the court really would have to do if it were to apply Rose v. Henry. The California Supreme Court is very clear about what it did, and I think what it did is clearly wrong for the reasons that I've already talked about. The other point the respondent made is that they're alleging that people v. Watson and the prejudice analysis under that case is identical to Brecht or very similar, and that's just plainly wrong. Under people v. Watson, the focus is on the outcome of the trial. Would this have actually changed the outcome? But under Brecht, that's not the focus. The focus is whether there was a substantial and injurious influence or injury. That means did it make an impression on the jurors? And the ultimate question in Brecht is can we have confidence in this trial given what happened? And where there's grave doubt under O'Neill v. McAnish, if this court has doubts about whether a jury would have been able to ignore or whether it would have made a difference to this jury to hear that the alternate suspect had confessed twice, if the court has any doubt about that, it has to be construed for the petitioner, especially in a capital case. The court mentioned, and I think it's very important, the impact of this racial comment. And I want to point out that this didn't happen in a vacuum. This happened in a case, as the court pointed out, in a trial that was 24 years ago, this trial. There was not a single black person on this jury, and that was alleged in the Habeas petition that's in the record. And this was a case where the defense was that the defendant who was black had consensual sex with a white woman. And that's precisely the scenario that the Supreme Court has over and over and over again said has been racialized by prosecutors in this country's history. And I think it wouldn't make sense to ignore that context in ruling whether that was prejudicial. And courts have ruled that comments just like this one were prejudicial in exactly this context and for exactly the reasons that the chief judge points out. Let me stop you right there. When you talk about prejudice, are we talking about prejudice from the comment itself, or do we weigh the comment in judging prejudice on any constitutional error we find on this other issue, assuming there is a constitutional error? Do we factor that in our Brecht analysis? Assuming we, I mean, should we get to this point that we find constitutional error and we do a Brecht analysis on that error, do we factor in this prejudice comment in that analysis? Yes. Or is it? Well, the error can be analyzed all by itself, and I'll point out that Brecht is also the standard that would apply in this case. There's no deference owed to this California state courts with respect to this. It ruled, as the respondent pointed out, that this was a serious constitutional error. It applied a prejudice standard that was different from Brecht. So this court's applying Brecht to that. Now, it could apply Brecht to that all by itself in this circumstances and find that it was not harmless. But I think the court's right to point out that it's also appropriate to evaluate the harm of that comment given all of the other errors that happened. And I think the best way to do that in this case is to really look at the ways in which the walls were closing in on Armenia Kadjo from the beginning. And I've alleged this in the cumulative error claim, and I think it makes sense to look at it that way. The prosecution's case wasn't meaningfully tested because trial counsel didn't test any of the physical evidence. His strategy was to present very compelling evidence that his brother had confessed to this crime. That was excluded. That was also error. And so what he was left with, the only thing, was his own testimony. And he never should have been in that position to begin with. But because he was put in that situation where his testimony was all he had, and what he testified to is that this was a consensual sexual encounter, it was devastating that the prosecutor urges a jury with not a single black person on it to discount it because of his race. And that may well be exactly what this jury did. And it's also, I think, appropriate to evaluate that in the context of penalty phase errors as well. Because Armenia Kadjo, after this trial and after this racial comment during the closing, the prosecutor was able to look at this jury and say, this is an unknown quantity. We know nothing about this person. And this is the same prosecutor who has urged the jury to disregard what he said or discount his defense because of his race. And so it does make sense to evaluate those errors cumulatively. And in Paul v. Runnels, that's exactly what this court did. Thank you. Thank you. Very good arguments on both sides. Thank you very much. The case is argued. We'll stand submitted.
judges: Kozinski, O'scannlain, Smith